UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
ZULEKIA A.R.,

                    Plaintiff,          REPORT & RECOMMENDATION
                                        1:23-cv-05826-ER-GRJ

          v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

      In September of 2015, Plaintiff Zulekia A.R.[1] applied for Disability

Insurance Benefits and Supplemental Security Income benefits under the

Social Security Act. The Commissioner of Social Security denied the

applications.  Plaintiff commenced this action *pro se* seeking judicial review

of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and

1383 (c)(3).

      This case was referred to the undersigned for a Report and

Recommendation on May 2, 2024.  For the following reasons, it is

recommended that the Commissioner should be granted judgment on the

pleadings and this case should be dismissed.

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

## I. BACKGROUND

### A.    *Administrative Proceedings*

Plaintiff applied for benefits on September 21, 2015, alleging disability beginning June 1, 2012. (T at 192, 205, 441-47, 448-53).[2]  Plaintiff's applications were denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on April 26, 2018, before ALJ Robert Dorf.  (T at 60-85).  On July 12, 2018, ALJ Dorf issued a decision denying the applications. (T at 213-34).  On January 9, 2020, the Social Security Appeals Council granted Plaintiff's request for review and remanded the matter for a new hearing. (T at 237-40).

An administrative hearing was held on March 1, 2022, before a new ALJ, Seth Grossman. (T at 96-189).  Plaintiff appeared with an attorney and testified with the assistance of an interpreter. (T at 106-115). The ALJ also received testimony from Diana Grant, a vocational expert (T at 181-87), and two medical experts, Dr. Christopher Snyder (T at 102-103, 116-38) and Dr. Gerald Koocher. (T at 103, 138-78).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 11.

## B.    ALJ's Decision

On April 1, 2022, ALJ Grossman issued a decision denying the applications for benefits. (T at 13-37).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2012 (the alleged onset date).  (T at 19).  The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. (T at 19).

The ALJ concluded that Plaintiff's lumbago with sciatica; neuropathy/radiculopathy; anxiety disorder; and major depressive disorder were severe impairments as defined under the Act. (T at 19).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 20).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 404.1567 (b) and 416.967 (b), with the following limitations: she can perform a job involving simple tasks with no more than occasional contact with supervisors, co-workers, and the public, and requiring no more than occasional stopping, crouching, and kneeling, and no crawling. (T at 22).

3

The ALJ noted that Plaintiff had no past relevant work. (T at 28). Considering Plaintiff's age (41 on the alleged onset date), education (marginal), work experience (no past relevant work), and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 28-29).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between June 1, 2012 (the alleged onset date) and April 1, 2022 (the date of the ALJ's decision). (T at 29-30).

On May 2, 2023, the Appeals Council denied Plaintiff's request for review, making ALJ Grossman's decision the Commissioner's final decision. (T at 1-7).

C.    *Procedural History*

Plaintiff commenced this action, *pro se*, by filing a Complaint on July 5, 2023. (Docket No. 1).  On December 18, 2023, the Commissioner filed a brief in support of the denial of benefits and requesting judgment on the pleadings and dismissal of this action. (Docket No. 16).

On January 10, 2024, the Honorable Sarah L. Cave, United States Magistrate Judge, issued an order directing Plaintiff to respond to the Commissioner's brief on or before February 9, 2024. (Docket No. 18).

4

Plaintiff did not respond to the Commissioner's brief, and on February 26, 2024, Judge Cave entered an order deeming the matter fully briefed and ready for a report and recommendation. (Docket No. 20).  The case was referred to the undersigned on May 2, 2024.

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

## B.    Five-Step Sequential Evaluation Process

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

6

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

In the Second Circuit, "[w]e liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017)(quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (alterations in original).  This applies to requests for review of the denial of Social Security benefits. *See Tipadis v. Comm'r of Soc. Sec.*, 284 F. Supp. 3d 517, 523 (S.D.N.Y. 2018).

Here, as outlined above, Plaintiff commenced this action *pro se* seeking judicial review of the Commissioner's denial of benefits but failed to file a brief in support of her request, as required under the Court's Standing Order Regarding Social Security Cases.

Under the process in the Standing Order, due to Plaintiff's *pro se* status, once the time for Plaintiff to file a supporting brief lapsed, the Commissioner filed an opposition brief and served the same on Plaintiff. (Docket No. 16, 17). This provided Plaintiff with a further opportunity to submit papers in support of her requested relief, but she did not file anything.

Judge Cave provided Plaintiff a third opportunity to submit supporting papers in her January 10, 2024, order which was served on Plaintiff.

(Docket Nos. 18, 19).  Plaintiff has still not filed any documents in response to the Commissioner's arguments and/or in support of her request for judicial review.  As such, the Commissioner's request for judgment on the pleadings and dismissal of this case is unopposed.

However, "[i]n the context of a Social Security benefits appeal, if a motion for judgment on the pleadings is unopposed, the Court may not grant the unopposed motion based merely upon the opposing party's failure to respond; rather, the Court 'must review the record and determine whether the moving party has established that the undisputed facts entitle it to judgment as a matter of law.'" *Mitchell v. Berryhill*, No. 15 CIV. 6595 (PED), 2017 WL 2465175, at *6 (S.D.N.Y. June 7, 2017)(quoting *Martell v. Astrue*, No. 09-CV-1701, 2010 WL 4159383, at *2 n.4 (S.D.N.Y. Oct. 20, 2010) ("[I]n light of the similarity between a motion for summary judgment and a motion on the pleadings in the present context, where there is a fulsome record of the underlying administrative decision, we look to the summary judgment context for guidance."));

As such, "[e]ven though a motion for judgment on the pleadings is unopposed, the Court does not embrace default judgment principles in resolving the motion." *Negron ex rel. M.C.N. v. Comm'r of Soc. Sec.*, No. 11-CV-8685 (KBF), 2013 WL 2896845, at *4 (S.D.N.Y. June 12, 2013)

(citing *Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004)).

Accordingly, the Court turns to the merits.  For the reasons that follow, the Court finds that the Commissioner's denial of benefits is supported by substantial evidence and recommends that this case be dismissed.

A.    *Physical Limitations*

A claimant's "residual functional capacity" ("RFC") is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis."  *Melville*, 198 F.3d at 52 (quoting SSR 96-8p).

When assessing a claimant's RFC, an ALJ must consider medical opinions regarding the claimant's functioning and make a determination based on an assessment of the record as a whole. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.9527(d)(2) ("Although we consider opinions from medical sources on issues such as ...your residual functional capacity...the final responsibility for deciding these issues is reserved to the Commissioner.").

As noted above, the ALJ found that Plaintiff's lumbago with sciatica and neuropathy/radiculopathy were severe impairments but concluded that

10

Plaintiff retained the RFC to meet the physical demands of light work, as defined in 20 CFR 404.1567 (b) and 416.967 (b), provided she was required to engage in no more than occasional stopping, crouching, and kneeling, and no crawling. (T at 19, 22).

As explained below the Court finds the ALJ's assessment is supported by substantial evidence.

First, the ALJ provided a thorough and reasonable reading of the record.  Although the treatment notes document consistent complaints of low back pain, a burning sensation in the feet, and some limitation in movement, Plaintiff is generally described as being in good health, able to perform usual activities, and improving with treatment. (T at 23, 614, 620-21, 624-25, 626-27, 628-29, 630-31, 632-33, 672, 678-79).  A nerve conduction test showed mild right peroneal neuropathy and lumbar x-ray was normal. (T at 23-24; 636, 637-40, 1216-17).

Second, the ALJ's conclusion is supported by an appropriate weighing of multiple medical opinions.

Dr. Aurelio Salon performed a consultative examination in November of 2015.  On examination, Dr. Salon noted normal gait and stance, full squat, and ability to walk on heels and toes without difficulty. (T at 691). He documented a full range of motion throughout the spine, and negative

straight leg raising bilaterally, with normal neurological findings. (T at 691).

Dr. Salon opined that Plaintiff would not have any limitation in her ability to

sit, stand, climb, push, pull, or carry heavy objects. (T at 692).

Dr. Silvia Aguiar performed a consultative examination in November

of 2017.  Dr. Aguiar reported that Plaintiff's gait and stance were normal,

and she was able to perform a full squat and walk on heels and toes

without difficulty. (T at 729). Plaintiff had full range of motion throughout the

spine, including negative straight leg raising, and normal neurological

findings, except for a fine motor tremor in the bilateral upper extremities. (T

at 730).

Dr. Aguiar opined that Plaintiff should avoid operating heavy

machinery, heights, and other positional activities, as well as operating a

motor vehicle. (T at 731). Dr. Aguiar found that Plaintiff could frequently

lift/carry up to 20 pounds, occasionally lift up to 50 pounds, sit for three

hours at a time and up to five hours total in the workday, and stand or walk

for up to one hour at a time and for one to two hours total in the workday.

(T at 732-33).

Dr. Aguiar opined that Plaintiff could frequently/continuously perform

all manipulative activities, operate foot controls, and perform postural

activities, except for balancing and climbing ladders and scaffolds. (T at

734-35). Dr. Aguiar also assessed limitations regarding exposure to hazards, noise, and respiratory irritants. (T at 736).

In March of 2018, Dr. Fausto Gonzalez, Plaintiff's primary care doctor, completed an assessment in which he opined that Plaintiff would need to lie down every half hour during the day, could never lift or carry any weight, and could not sit, stand, or walk for more than 30 minutes at a time during an eight-hour day. (T at 741-45). Dr. Gonzalez also reported that Plaintiff could not use her hands or arms for any grasping, pushing, pulling or fine manipulation, and had mild restrictions for exposure to hazards and irritants. (T at 743).

Dr. Allen Meisel performed a consultative examination in October 2021. (T at 1546-49). Plaintiff's gait and stance were normal, she was unable to walk on her heels or toes, and her squat was limited to 30 percent. (T at 1547). Plaintiff had limited range of motion in the lumbar spine, but full range of motion in the extremities, stable and non-tender joints, and normal strength, sensation, and reflexes. (T at 1548). Dr. Meisel opined Plaintiff had no physical limitations. (T at 1548, 1550-55).

At an administrative hearing held in March of 2022, the ALJ received testimony from Dr. Christopher Snyder, a non-examining medical expert.

13

Dr. Snyder reviewed the record and opined that Plaintiff could perform a full range of light work. (T at 116-17).

The ALJ considered the foregoing opinions and gave them varying weight.  In particular, the ALJ afforded relatively greater weight to the opinions of Dr. Meisel, Dr. Snyder, and Dr. Salon.  (T at 27-28).  This decision was based on a reasonable reading of the record, including the course of treatment, clinical findings, and opinions of medical professionals with the opportunity to review the record.

When the record contains competing medical opinions, it is the role of the Commissioner, and not this Court, to resolve such conflicts. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").  The ALJ may reach a determination that "does not perfectly correspond with any of the opinions of medical sources," provided the ALJ's overall assessment is supported by substantial evidence and consistent with applicable law. *See Trepanier v. Comm'r of SSA*, 752 Fed. Appx. 75, 79 (2d Cir. 2018).

Regarding Dr. Gonzalez, the ALJ recognized his status as a treating physician and properly applied the treating physician's rule in discounting his assessment, which was based on infrequent visits, is inconsistent with other medical opinions in the record, and which the ALJ reasonably found

14

was insufficiently supported by the treatment record.[3] (T at 27). *See Pena v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *15 (E.D.N.Y. Mar. 25, 2013)(noting that where "the treating physician issued opinions that [were] not consistent with other substantial evidence in the record, such as the opinion of other medical experts, the treating physician's opinion is not afforded controlling weight") (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)) (internal quotation marks omitted) (alteration in original); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)("[T]he less consistent [the treating physician's] opinion is with the record as a whole, the less weight it will be given.").

Lastly, to the extent the record supports some mild to moderate impairment in Plaintiff's physical RFC, the ALJ adequately accounted for such impairment by limiting Plaintiff to a reduced range of light work. (T at 22). *See Jordan v. Comm'r of Soc. Sec.*, No. 16-CV-9634 (KHP), 2018 WL 1388527, at *10 (S.D.N.Y. Mar. 19, 2018)("Moreover, a number of courts have found that 'moderate' limitations for standing, walking, sitting, and lifting are consistent with the ability to do light work.")(collecting cases); *see*

---

[3] In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. See 20 C.F.R. § 404.1520c. Because Plaintiff applied for benefits before that date, the new regulations do not apply here.

15

*also Guzman v. Comm'r of Soc. Sec.*, No. 21-CV-6538 (KHP), 2022 WL

3013108, at \*6 (S.D.N.Y. July 29, 2022); *Katherine R. v. Comm'r of Soc.*

*Sec.*, No. 1:20-CV-01055-MJR, 2021 WL 5596416, at \*5 (W.D.N.Y. Nov.

30, 2021)("[C]ourts within this Circuit have consistently held that mild and

moderate limitations, such as those assessed by Dr. Liu, are consistent

with an RFC for light work.").

In sum, the Court finds that the ALJ's assessment of Plaintiff's

physical limitations was supported by substantial evidence and consistent

with applicable law.

### B.    Mental Limitations

The ALJ concluded that Plaintiff's anxiety disorder and major

depressive disorder were severe impairments but found that she retained

the RFC to perform a job involving no more than simple tasks with

occasional contact with supervisors, co-workers, and the public. (T at 22).

The Court concludes that the ALJ's assessment is supported by

substantial evidence.

First, the ALJ thoroughly reviewed the treatment record and noted

that Plaintiff's mental status findings were generally unremarkable. (T at 23,

25-26; 696-98, 811-12, 814-15, 835, 837-38, 905-06, 699, 702, 705, 709,

712, 790-91, 796-97, 799-800, 820-21, 832-33, 842-43, 845-46, 848-49,

16

918-19, 967-68, 1466-67, 1469-70, 1472-73, 1475-76, 1478-79, 1481-82, 1595-96, 1609-10, 1615-16, 1620-21, 1623-24, 1635-36, 1638-39, 1653-54).

Although ALJs must be careful not to overestimate the significance of a claimant's ability to be cooperative and appropriate during brief visits with supportive medical providers, such evidence can support a decision to discount marked or extreme limitations. *See, e.g., Knief v. Comm'r of Soc. Sec.*, No. 20 Civ. 6242 (PED), 2021 WL 5449728, at *1–2, 8–9 (S.D.N.Y. Nov. 22, 2021) (affirming ALJ decision based on treatment records and mental status examinations that claimant had "meaningful, but not profound, mental restrictions" with chronic anxiety and mood disturbances, adequately treated with regular psychiatric appointments and psychiatric medications); *Burchette v. Comm'r of Soc. Sec.*, No. 19 CIV. 5402 (PED), 2020 WL 5658878, at *10 (S.D.N.Y. Sept. 23, 2020)("In sum, Dr. Phillips' opinion, combined with largely unremarkable mental status examination findings in the treatment record and plaintiff's ADLs, provide substantial evidence for the ALJ's RFC determination.").

Second, the ALJ gave appropriate weight to Plaintiff's activities of daily living and reasonably found them inconsistent with disabling mental impairments. In September of 2017, Plaintiff reported spending two months

on a "good vacation" in the Dominican Republic. (T at 796-97). Plaintiff told Dr. Kushner that she got up and got dressed every day, did the cooking for the household, helped her daughter get ready for school, had friends, and got along with family members. (T at 687). She reported to Dr. Aguiar that she regularly performed cooking, cleaning, laundry, and shopping. (T at 729). At the March 2022 administrative hearing, Plaintiff testified that she had recently begun working five days a week cleaning offices. (T at 107-08).

While ALJs must not overinterpret a claimant's ability to perform limited activities of daily living, an ALJ may discount an assessment of marked impairment where, as here, the claimant's activities are not consistent with that level of impairment. *See Santana v. Saul*, No. 18 CIV. 10870 (PED), 2019 WL 6119011, at *8 (S.D.N.Y. Nov. 18, 2019)(collecting cases recognizing ALJ's ability to discount assessment as inconsistent with claimant's activities); *see also Dorta v. Saul*, No. 19CV2215JGKRWL, 2020 WL 6269833, at *6 (S.D.N.Y. Oct. 26, 2020).

Third, the ALJ reasonably reconciled the medical opinions regarding Plaintiff's mental functioning.

Dr. Michael Kushner performed a consultative psychiatric examination in November of 2015. Dr. Kushner diagnosed depressive

disorder. (T at 687). He opined that Plaintiff had moderate limitations with maintaining attention and concentration, maintaining a regular schedule, learning new tasks, and performing complex tasks under supervision. (T at 687).

Dr. Kushner also assessed "occasional mild to moderate limitations" in Plaintiff's ability to relate adequately with others and appropriately deal with stress. (T at 687). He assessed "none-to-mild" limitation with respect to following and understanding simple directions and instructions and performing simple tasks independently. (T at 687).

In sum, Dr. Kushner stated that Plaintiff's evaluation was consistent with psychiatric problems but believed that "this does not appear to be significant enough to interfere with [her] ability to function on a daily basis." (T at 687).

Dr. Kushner performed a second consultative examination in November of 2017. He made essentially that same assessment regarding Plaintiff's ability to meet the mental demands of basic work activity. (T at 719-26).

Dr. Miguel Hernandez, Plaintiff's treating psychiatrist, completed a medical source assessment in April of 2018, which was co-signed by Monica Santiago, LMSW. (T at 747-52). Dr. Hernandez opined that

Plaintiff had moderate impairment in her ability to meet most of the demands of basic work activity but assessed marked limitation with respect to her ability to complete tasks in a timely manner, maintain attention for 2-hour segments, and perform at a consistent pace without interruptions from symptoms or an unreasonable number of breaks. (T at 749).  He further reported that Plaintiff would be expected to be late for work about 4 days per month and absent about 3 days per month. (T at 750).

In a second questionnaire completed later in April of 2018, Ms. Santiago and Dr. Hernandez opined that Plaintiff would have difficulty with social maturity, communicating clearly and effectively, responding appropriately to strangers and people in authority, accepting supervision, maintaining attention and attendance, requesting assistance, working with or near others, responding to supervision, and holding a job. (T at 754-57).

In October of 2021, Dr. Eleanor Murphy performed a consultative psychiatric evaluation.  Dr. Murphy diagnosed depressive disorder, anxiety disorder, and unspecified neurodevelopmental disorder. (T at 1500). She opined that Plaintiff had moderate limitations with understanding, remembering or applying both simple and complex directions and instructions; moderate limitations using reason and judgment to make work-related decisions; marked limitations interacting with supervisors, co-

20

workers and the public; marked limitations sustaining concentration and performing a task at a consistent pace; marked limitations sustaining an ordinary routine and regular attendance at work, and moderate limitations regulating emotions, controlling behavior, and maintaining well-being. (T at 1500). Dr. Murphy also completed a questionnaire in which she assessed moderate and marked mental limitations in various domains of functioning. (T at 1500, 1502-03).

During the March 2022 administrative hearing, the ALJ received testimony from Gerald Koocher, a psychiatric expert, who did not examine Plaintiff but did review the record. (T at 138-80). Dr. Koocher endorsed the diagnosis of depression and anxiety. (T at 139). Dr. Koocher opined that Plaintiff's ability to understand, remember and apply information was mild-to-moderately limited; her ability to interact with others was "generally unimpaired," but at most mildly limited; and her capacity to concentrate, persist and maintain pace, and adapt and manage herself, were both mildly to moderately limited. (T at 146).

The ALJ inquired as to whether Plaintiff would be able to perform simple tasks involving, at most, occasional contact with supervisors, coworkers and the public, and no fast-paced quotas; Dr. Koocher

responded that nothing in the record demonstrated a need for greater limitations. (T at 147-48).

The ALJ gave greater weight to the opinions of Dr. Kushner and Dr. Koocher and discounted the assessments of Dr. Hernandez and Dr. Murphy. (T at 27-28).  The Court finds this determination is supported by substantial evidence and consistent with applicable law.

The ALJ recognized Dr. Hernandez's status as a treating provider, but reasonably found his assessment of marked limitations inconsistent with the record, including his own treatment notes.  For example, Dr. Hernandez repeatedly described Plaintiff as having "no apparent serious mental abnormalities" and assigned Global Assessment of Functioning ("GAF") [4] scores of 70.[5] (T at 699, 702, 706, 709, 712, 790-91, 799-800, 811-12, 820-21, 829-30, 848-49).

An ALJ may discount a medical opinion that is "internally inconsistent with [the physician's] own, contemporaneous examination findings." *Donofrio v. Saul*, No. 18 Civ. 9968, 2020 U.S. Dist. LEXIS 54407, at *25 (S.D.N.Y. Mar. 27, 2020); *see also Calero v. Colvin*, No. 16 Civ. 6582, 2017

---

[4] The GAF "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health illness." *Pollard v. Halter*, 377 F.3d 183, 186 (2d Cir. 2004).

[5] A GAF score between 61-70 "indicates some mild symptoms or some difficulty in social or occupational functioning, but generally functioning 'pretty well.'" *Maldonado v. Colvin*, No. 15 CIV. 4016 (HBP), 2017 WL 775829, at *5 n.8 (S.D.N.Y. Feb. 28, 2017).

U.S. Dist. LEXIS 157262, at *17-18 (S.D.N.Y. Sep. 26, 2017)("The ALJ need not fully credit the evaluations of every treating or consulting physician. Grounds for an ALJ to give limited weight to a physician's conclusions include: inconsistencies with the rest of the administrative record and internal inconsistencies.").

Although the ALJ did not expressly discuss the second opinion provided by Dr. Hernandez in April of 2018, the Court finds that any error in this regard was harmless.  The second opinion was essentially contemporaneous with the first and assessed fundamentally the same highly restrictive limitations. As such, even if the second opinion were to be considered, it would reasonably be assigned less weight for the same sound reasons (discussed above) that the ALJ cited in deciding to discount Dr. Hernandez's original opinion. *See Camino v. Colvin*, No. 1:13–CV–00626 (MAT), 2015 WL 5179406, at *6 (W.D.N.Y. Sept. 4, 2015) (finding harmless error where ALJ did not explicitly consider medical opinion because it would not have changed the outcome of the decision, which was supported by substantial evidence); *Arguinzoni v. Astrue*, No. 08–CV–6356T, 2009 WL 1765252, at *9 (W.D.N.Y. June 22, 2009) (finding harmless error where ALJ did not assign specific weight to medical

opinions because decision was supported by substantial evidence) (collecting cases).

The ALJ also reasonably gave little weight to Dr. Murphy's extremely restrictive assessment, finding it based on a single examination, inconsistent with the overall clinical findings, Plaintiff's activities of daily living, and other medical opinion evidence of record (including the assessments of Dr. Kusher and Dr. Koocher). (T at 28).

Indeed, the Second Circuit has long cautioned that "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013)(citing *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)). "This concern is even more pronounced in the context of mental illness where … a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019).

Lastly, to the extent the record documents mild to moderate impairment in Plaintiff's mental functioning, the ALJ appropriately accounted for such impairment by limiting Plaintiff to work involving no more than simple tasks with occasional contact with supervisors, co-workers, and the public. (T at 22). *See Duffy v. Comm'r of Soc. Sec.,* No. 17CV3560GHWRWL, 2018 WL 4376414, at *18 (S.D.N.Y. Aug. 24, 2018),

*report and recommendation adopted,* No. 1:17-CV-3560-GHW, 2018 WL 4373997 (S.D.N.Y. Sept. 13, 2018)("Mild or moderate limitations in concentration do not necessarily establish that a claimant is disabled, particularly where the ALJ limits the scope of work to unskilled, repetitive work.")(collecting cases); *see also Campos v. Saul*, No. 18CV9809 (DF), 2020 WL 1285113, at *23 (S.D.N.Y. Mar. 18, 2020); *Stonick v. Saul*, No. 3:19-CV-01334 (TOF), 2020 WL 6129339, at *13 (D. Conn. Oct. 19, 2020).

### C.    Step Five Determination

At step five of the sequential analysis, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy.  The Commissioner bears the burden of proof at this step. *See Butts*, 416 F.3d at 103; 20 C.F.R. § 404.1560(c)(2).

In the present case, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 29).  In reaching this conclusion, the ALJ relied on the opinion of Diana Grant, a vocational expert, who testified that a hypothetical claimant with the limitations set forth in the RFC determination could perform the representative occupations of sorter, marker, and mailroom clerk, which positions exist in significant numbers in the national economy. (T at 180-87).  This aspect of the ALJ's decision is thus likewise supported by

substantial evidence. *See Green v. Saul*, No. 18CV02857JGKKHP, 2019 WL 2996502, at *10 (S.D.N.Y. June 19, 2019), *report and recommendation adopted sub nom. Green v. Berryhill*, No. 18CV2857 (JGK), 2019 WL 2992088 (S.D.N.Y. July 9, 2019)("An ALJ may rely on a VE's testimony to meet that burden so long as the testimony is based on an RFC assessment supported by substantial evidence.")(citing *Calabrese v. Astrue*, 358 F. App'x 274, 276–77 (2d Cir. 2009); *Hill v. Berryhill*, No. 1:17-CV-02090 (SDA), 2018 WL 4462362, at *11 (S.D.N.Y. Sept. 18, 2018)),

## IV.  CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Commissioner should be granted judgment on the pleadings and this case should be dismissed.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. *See also* Fed. R. Civ. P. 6(a), (b), (d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the District Judge. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010).

The Clerk of the Court is requested to transmit a copy of this Report and Recommendation, to Plaintiff via first class mail, postage prepaid, at her last known address.

Dated: July 19, 2024

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

27